IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELVIN JORDAN, (K96712), | ) |
| Plaintiff, | ) |
| | ) No. 11 C 2362 |
| v. | ) |
| | ) Judge John Z. Lee |
| BRIAN R. STAHR, PARHASARATHI GHOSH, LIPING ZHANG, KERRY WILLIAMS, AKINOLA IYIOLA, REBECCA LAWLER, JEFFREY NURSE, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Melvin Jordan, an inmate at the Stateville Correctional Center ("Stateville"), filed this lawsuit against the Defendants pursuant to 42 U.S.C. § 1983, alleging that they acted with deliberate indifference to his ankle and foot injuries. Defendants Akinola Iyiola, Rebecca Lawler, Jeffrey Nurse, Brian Stahr and Kerry Williams's (collectively, the "State Defendants") move to dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies and failure to state a claim. Defendants Dr. Parhasarathi Ghosh and Dr. Liping Zhang (collectively, "Medical Defendants") also move for summary judgment on the basis of Plaintiff's failure to exhaust the grievance procedure at Stateville. For his part, Plaintiff has opposed these motions and has also filed several motions for discovery, which the Medical Defendants seek to strike in light of their pending summary judgment motion.

For the reasons provided herein, Defendants' motions are denied. Additionally, the Court believes that recruitment of counsel is appropriate at this time. Plaintiff's motions regarding discovery are stricken without prejudice; they can be refiled by recruited counsel if he or she deems it necessary.

1

## I. Factual Background

### A. Facts Relevant to Motion to Dismiss[1]

Plaintiff injured his ankle and foot during a recreational session in the prison yard at Stateville on August 11, 2008. *See* Pl.'s 3d Am. Compl. ¶¶ 20–21. This injury left him in pronounced pain. *See id.* ¶¶ 21, 24. Plaintiff informed Defendant Williams, who was supervising the prison yard at the time, of his injury and requested medical attention. *See id.* ¶¶ 22–27. According to Plaintiff, Williams responded that "he didn't 'give a fuck'" and told Plaintiff that he was not going to call for medical assistance. *See id.* ¶ 28. Plaintiff returned to his housing unit without receiving any medical assistance for the injury. *See id.* ¶¶ 29–30.

When he returned to his housing unit, Plaintiff asked Defendant Iyiola, another correctional official, for medical attention. *See id.* ¶ 33. Despite Plaintiff's request to Iyiola, no medical attention was provided. *See id.* ¶¶ 34–39. Plaintiff attempted to relieve the pain in his foot and ankle by soaking his foot in the toilet water in his cell. *See id.* ¶ 37. By the evening of August 11, Plaintiff still had not received any medical attention for his foot or ankle. Because he was unable to climb into his bunk, he had to sleep on the floor of his cell. *See id.* ¶¶ 40–41.

The next day, on August 12, Defendant Lawler was distributing medication in Plaintiff's housing unit. *See id.* ¶ 45. Plaintiff complained to Lawler about his ankle and foot injuries, and Lawler said she would obtain medical assistance for Plaintiff. *See id.* ¶¶ 46–47. However, again, no medical assistance was provided. *See id.* ¶ 48.

Finally, on August 13, Defendant Stahr accompanied Plaintiff to the health care unit. *See id.* ¶ 53. However, Plaintiff alleges Stahr's transportation methods exposed him to further pain.

---

[1] The following information is taken from Plaintiff's Third Amended Complaint. It is set forth in light most favorable to Plaintiff, and all reasonable inferences are made in his favor. *Hahn v. Walsh*, 762 F.3d 617, 628 (7th Cir. 2014). The Third Amended Complaint is liberally construed in Plaintiff favor because he is pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

*See generally id.* ¶¶ 58–64. Stahr did not call a nurse to assist Plaintiff with walking to the health care unit. *See id.* ¶¶ 56–57. Instead, Plaintiff was forced to walk to the health care unit on his own. *See id.* ¶¶ 61–62, 64. Despite Plaintiff's requests for a nurse, his protestations that descending the steps would be painful, and request that Stahr handcuff him in the front of his body so that he could descend the stairway more easily, Stahr made Plaintiff walk to the health care unit by himself and refused to handcuff him in the front as requested. *See id.* ¶¶ 58–60.

Once in the health care unit, Plaintiff began receiving treatment for his foot from Defendant Dr. Zhang. *See id.* ¶ 65. Dr. Zhang indicated that Plaintiff's foot "didn't look good" and might be fractured. *See id.* ¶ 67. Dr. Zhang further noted the need for an x-ray and ordered one. *See id.* Plaintiff did receive medication, a brace, and a single crutch from Dr. Zhang, but he did not receive an x-ray or MRI. *See id.* ¶ 67–68. Plaintiff asserts that, in addition to Dr. Zhang, Dr. Ghosh also was responsible for treating Plaintiff and also ordered an x-ray. *See id.* ¶ 71. However, Plaintiff never received an x-ray. *See id.* ¶ 72.

Plaintiff's injury did improve to the point that he attempted to jog in November 2008. *See id.* ¶ 76. However, he reinjured himself while jogging. *See id.* He was again seen by Dr. Zhang, but did not receive an x-ray. *See id.* ¶¶ 78–83. Plaintiff put in numerous requests for an x-ray over the next few months, but never received one. *See generally id.* ¶¶ 84–92 (detailing numerous requests and grievances Plaintiff filed).

### B. Facts Relevant to Summary Judgment Motion

On August 13, 2008, Plaintiff filed a grievance complaining of inadequate access to medical treatment with respect to his August 11, 2008 ankle injury. *See* Medical Defs.' LR 56.1(a)(3) Stmt. ¶ 3. At the time Plaintiff prepared this grievance, he had no knowledge of any improper care by Dr. Zhang or Dr. Ghosh. *See id.* ¶ 4. Plaintiff filed another grievance on

3

August 13, 2008, which complained of Defendant Stahr's conduct when transporting him to the health care unit. *See id.* ¶ 5. This grievance did not mention Dr. Zhang or Dr. Ghosh. *See id.* On August 16, 2008, Plaintiff formally filed his first grievance related to the medical care provided by the doctors. *See id.*¶ 6. The grievance only mentions Dr. Zhang, not Dr. Ghosh. *See id.* ¶ 7.

On January 10, 2009, Plaintiff filed a grievance that included complaints about the continued lack of medical care, including the failure to receive an x-ray of his ankle. *See id.* ¶ 7. The January 10 grievance also noted that Plaintiff had not received a response to August 16 grievance. *See id.* Plaintiff avers that the January 10 grievance also referred to the lack of care for his ankle and foot injuries. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 8. This grievance also does not mention Dr. Ghosh. *See* Medical Defs.' LR 56.1(a)(3) Stmt. ¶ 9.

It is undisputed that the Administrative Review Board ("ARB") returned Plaintiff's grievances, stating that he had failed to include the proper materials. According to the Medical Defendants, Plaintiff admits his noncompliance with the procedures. *See id.* ¶ 10. Plaintiff takes issue with this characterization, claiming that the grievance procedures did not require him to attach the documents required by the ARB. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 10. Furthermore, Plaintiff points out that when the ARB returned the grievances to him, the 30-day deadline to submit the appeal had already elapsed, and the "Return of Grievance" form stated that "this issue will not be addressed further." *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 11.

Sherry Benton, the chairperson of the ARB, conducted a search of ARB's records to find any grievances that Plaintiff had appealed to ARB. *See* Medical Defs.' LR 56.1(a)(3) Stmt. ¶ 12–13. Benton's search revealed that on March 25, 2009, ARB received only the Grievance Officer's Report portion of Plaintiff's August 11 grievance. *See id.* ¶ 14. Based on the search,

she concluded that, on April 7, 2009, she sent materials back to the Plaintiff on April 7, 2009, indicating that ARB could not address the August 11 grievance because a copy of the actual grievance submitted by Plaintiff had not been provided. *See id.* ¶15. Plaintiff disputes these facts. Plaintiff believes that he did deposit the written submissions related to his August 13 and 16 grievances in the mail system directed to the ARB. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 14. Plaintiff acknowledges receipt of the packet from Benton on April 22, 2009, containing a "Return of Grievance" form with Benton's signature, signed April 3, 2009. *See id.* ¶ 15.

Benton's search also revealed that on April 9, 2009, ARB received only the Grievance Officer's Report portion of Plaintiff's January 10, 2009, grievance. *See* Medical Defs.' LR 56.1(a)(3) Stmt. ¶ 16. According to the ARB records, on April 29, 2009, she sent the materials back to the Plaintiff indicating that ARB could not address the grievance because, again, a copy of Plaintiff's written grievance had not been provided. *See id.* ¶ 17. Plaintiff also disputes this and again asserts that he included the written grievance in his original mailings. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 16. Plaintiff also acknowledges receipt of the packet from Benton sometime in May 2009 containing a "Return of Grievance" form with Benton's signature, signed April 27, 2009. *See id.* ¶ 15.

Finally, Benton's search of the ARB records uncovered documentation of other multiple prior grievances sent by Plaintiff, which were received by the ARB on April 27, 2009. *See* Medical Defs.' LR 56.1(a)(3) Stmt. ¶ 18. These materials included Plaintiff's August 16, 2008, grievance. *See id.* Plaintiff clarifies that this submission constituted an effort on his part to resubmit the allegedly incomplete appeal. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 18. Following receipt of this material, Benton sent Plaintiff a response indicating that ARB would not address Plaintiff's appeals any further due to his failure to submit the grievance materials in the proper

5

form, within 30 days of the grievance officer's findings. *See* Medical Defs.' LR 56.1(a)(3) Stmt. ¶ 19. Plaintiff does not dispute that this was the reason ARB used to justify not addressing his appeals further. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 19.

## II. Legal Standards

### A. Motion to Dismiss

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Thulin v. Shopko Stores Operating Co., LLC.*, 771 F.3d 994, 997 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In reviewing a motion to dismiss, the Court must accept as true all well-pleaded allegations in the complaint, and must draw all possible inferences in the plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Id.* at 1086 (citing *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)). Additionally, if the plaintiff inserts "unnecessary facts" into her complaint, the defendant "may use those facts to demonstrate that she is not entitled to relief." *Id.* (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *Jackson v. Marion Cnty.*, 66 F.3d 151, 153–54 (7th Cir. 1995)).

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the

nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 772–73 (7th Cir.2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

### III. Analysis

#### A.   State Defendants' Motion to Dismiss

The State Defendants move to dismiss Plaintiff's Third Amended complaint for failure to state a claim upon which relief may be granted. They first argue that Plaintiff's Complaint is untimely under the two-year statute of limitations. The statute of limitations may be raised in a motion to dismiss so long as the elements of the defense are present in the complaint so as to make the complaint frivolous; "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt.*, LP, 559 F.3d 671, 674–75 (7th Cir. 2009). "[T]he statute of limitations for § 1983 actions in Illinois is only two years." *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). "[T]he limitations period is tolled while a prisoner completes the administrative grievance process." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008).

The State Defendants argue Plaintiff completed the grievance process on March 9, 2009, but did not file his Complaint until more than two years later on April 7, 2011. *See* State Defendants' Mem. Supp. Mot. Dismiss 4–5. This is incorrect. Although the grievance officer's report addressing the August 13 and 16 grievances were signed on March 9, 2009, the issuance

7

of this report did not constitute the final step in the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 807 (7th Cir. 2006) (citing Ill. Admin. Code tit. 20, § 504.810). Moreover, Plaintiff states, in a declaration in support of his Complaint, that he did not complete the exhaustion process on April 27, 2009. *See* Pl.'s Decl. Supp. Civil Rights Compl. 6.[2] Plaintiff therefore has not pleaded himself out of court on statute of limitations grounds.

The State Defendants also argue that Plaintiff's Third Amended Complaint fails to state a claim for deliberate indifference. To state a claim for deliberate indifference, Plaintiff must allege: (1) he was suffering from an objectively serious medical condition, and (2) Defendants were deliberately indifferent to this condition. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). There is no dispute that Plaintiff suffered from an objectively serious medical condition. *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011) (instructing that an objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment, or so obvious that a layperson would recognize the condition).

Turning to the second requirement, "[d]eliberate indifference requires more than negligence, rather the defendant must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (internal quotation omitted). While "[e]ven gross negligence is insufficient to impose constitutional liability," a defendant meets the standard of criminal recklessness under deliberate indifference when he ignores a known risk. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Furthermore, even if delayed treatment did not exacerbate an injury, "deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (per curiam). "Even a few days' delay in

---

[2] This declaration is properly considered by the Court on a motion to dismiss because it was attached to the Third Amended Complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Id.*

Plaintiff states a claim for deliberate indifference under this standard. He allegedly complained to the State Defendants that he was suffering from an injury, and yet they failed to take any actions in response to his complaints. Plaintiff did not receive treatment for a painful injury for two days despite his numerous requests to the State Defendants for treatment. *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007) (inmate who suffered needlessly with dislocated finger for two days stated a deliberate indifference claim). Plaintiff's only remedy for his pain during the two-day period was to place his foot in the toilet water in his cell. These allegations are sufficient to state a claim for deliberate indifference.

The arguments advanced by the individual Defendants are also unpersuasive. Williams argues that his "interaction with Plaintiff was slight," and that he ordered him to return to the cell and nothing more. *See* State Defs.' Mem. Supp. Mot. Dismiss 9. But Plaintiff alleges that, when he sought medical attention from Williams, Williams replied that he "didn't 'give a fuck'" and refused any assistance. *See* 3d Am. Compl. ¶ 28.

Iyiola and Lawler also argue that the complaint contains no allegations of deliberate indifference as to them. But, as portrayed in the complaint, neither of them took any action to obtain medical care for Plaintiff even though they knew that he had suffered a serious ankle injury. This is sufficient at the pleading stage to survive a motion to dismiss. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 680 (7th Cir. 2012) (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical Defendants simply cannot ignore an inmate's plight.").

For his part, Defendant Nurse claims that he did nothing wrong because Plaintiff was already on the way to the health care unit when he was involved. *See* State Defs.' Mem. Supp. Mot. Dismiss 12. However, according to the allegations, Nurse refused to provide Plaintiff with any assistance in his cell, nor did he provide Plaintiff with a wheelchair. In so doing, Nurse exposed Plaintiff to unnecessary pain because it forced him to walk on his painful ankle to the medical unit. This states a claim for relief against Defendant Nurse.

Finally, Defendant Stahr also argues that Plaintiff cannot proceed with a claim against him based solely upon his refusal to obtain a wheelchair and handcuff Plaintiff in a manner that would have allowed him to walk down stairs without aggravating his injuries. Generally, a correctional officer may not use force for a malicious or sadistic purpose, but instead may use force for good faith purpose. *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). It is Plaintiff's view that there was no reason for Stahr, who was aware of Plaintiff's condition, to expose him to this pain. These allegations, view in a light most favorable to Plaintiff, demonstrate that Stahr's handcuffing of Plaintiff and forcing him down the stairs resulted in pain and suffering that served no "penological purpose" and thus state a viable claim. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted).[3]

For these reasons, the State Defendants' motion to dismiss is denied.

### B. Medical Defendants' Summary Judgment Motion

The Medical Defendants argue that Plaintiff failed to exhaust his claims through the Illinois Department of Corrections grievance process as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) and consequently the Court should enter summary judgment in their favor. *See generally* Medical Defs.' Mem. Supp. Mot. Summ. J. The PLRA requires

---

[3] *Williams v. Elyea*, 163 F. Supp. 2d 992, 999 (N.D. Ill. 2001), cited by Stahr, involved a non-emergent medical condition and is readily distinguishable.

that an inmate exhaust his available prison grievance process before filing his claim in federal court. 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006). An inmate must strictly comply with the requirements of the prison grievance process to exhaust his claims. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). Failure to exhaust is an affirmative defense on which the defendants bear the burden of proof. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Illinois has a multiple stage grievance process. First, the inmate submits a complaint to his counselor. *Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.810(a)). If unsatisfied, the inmate then submits a formal grievance to his counselor. *Id.* (citing Ill. Admin. Code tit. 20, § 504.810(a) & (b)). The grievance officer then will investigate the grievance and forward a recommendation to the warden (also referred to as the Chief Administrative Officer), who makes a final decision at the prison level. *Id.* (citing Ill. Admin. Code tit. 20, § 504.810(d)). Plaintiff may then bring an appeal to the Administrative Review Board ("ARB"), who makes a recommendation to the Director of the IDOC. *Id.* (citing Ill. Admin. Code tit. 20, § 504.850(b) & (f)). The Director makes a final decision on the grievance. *Id.*

The Medical Defendants' first contend that Plaintiff failed to exhaust because his grievances failed to identify the Medical Defendants by name, as required by Illinois's Administrative Code. The Administrative Code requires that:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

Ill. Admin. Code tit. 20, § 504.810(b). The grievance must provide sufficient information to identify the defendant as the target of the allegation, *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir.

2014); *Gray v. Ghosh*, No. 11 C 5513, 2014 WL 3016129, at *4 (N.D. Ill. July 3, 2014), but the "grievant is not required to know the name of the prison employee he's complaining about . . . ." *Roberts*, 745 F.3d at 235.

Defendants' argument is unconvincing. It is true that Plaintiff did not refer to Drs. Ghosh or Zhang by name in his grievances. *See* Pl.'s LR 56.1(b)(3)(B) Stmt., Exs. H-1–H-4. But Plaintiff did complain about the lack of treatment in the health care unit and the quality of the care he received from the physicians. For example, in his August 16 grievance, Plaintiff stated that he was seen by a physician, who failed to address his pain and injuries. *See id.* H-2, 1. In his January 10 grievance, Plaintiff explains that he had not received needed medical attention despite various grievances. *See id.* H-3. This information was sufficient to allow the grievance counselor to identify Dr. Zhang and follow up with him to inquire about Plaintiff's care. *See id.* Ex. A at 8 (Response to Committed Person's Grievance). Accordingly, the information provided by Plaintiff, when considered in its totality, was sufficient to alert IDOC of Plaintiff's complaints in this case.

Defendants also argue that Plaintiff failed to submit his grievance appeals to the ARB within the required time period. An appeal to the ARB must be made within 30 days of the warden's decision, and the appeal must include copies of the "Grievance Officer's report, and the Chief Administrative Officer's decision . . . ." Ill. Admin. Code tit. 20, § 504.850(a).

The ARB's representative, Shelly Benton, initially rejected Plaintiff's appeal because it did not include the original written portion of Plaintiff's grievance. *See* Medical Defs.' LR 56.1(a)(3) Stmt., Ex A, Sherry Benton Decl., ¶ 9). When Plaintiff attempted to resubmit the requested information with his appeal, Benton then responded that the 30-day appeal period had expired. *See id.* ¶ 13.

The problem with the Medical Defendants' argument here is that Benton imposed a requirement that is not part of the Administrative Code of Illinois. The Code does not require Plaintiff to submit his written grievance to the ARB. Instead, he must submit an appeal in writing and attach the Grievance Officer's report and the Chief Administrative Officer's decision. Ill. Admin. Code tit. 20, § 504.850(a). This provision was not unknown to Benton. In fact, she recited this specific provision of the Administrative Code in her affidavit filed in support of the Medical Defendants' summary judgment motion. *See* Medical Defs.' LR 56.1(a)(3) Stmt., Ex A, Sherry Benton Decl., ¶ 3.

It is true that a prisoner must file complaints and appeals in the time, place, and manner required by the administrative rules. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). But here Plaintiff followed the administrative rules. He submitted the Grievance Officer's report and the Chief Administrative Officer's decision with his written appeal. Nothing in the rules required Plaintiff to provide his written grievance to ARB as well. It also is worth noting that "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. This rule is particularly true where "the misstep in [Plainitff's] case was entirely that of the prison system." *Id.* at 810. A prisoner can only do what is reasonably within his power under the rules. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).

There is no dispute that Plaintiff submitted the Grievance Officer's Report and Chief Administrative Officer's decision along with his appeal within 30 days of the Chief Administrative Officer's ruling. Plaintiff therefore complied with the requirements.

What is more, there was no reason for Plaintiff to suspect that his submission was unsatisfactory. Benton rejected Plaintiff's original submission on improper grounds by imposing a requirement not contained in the Administrative Code. Plaintiff's attempt to comply with Benton's requirement caused his second submission to be deemed untimely. Benton's two-pronged approach of rejecting a grievance on grounds not in the Administrative Code, and then rejecting Plaintiff's subsequent attempt as untimely, renders the grievance process effectively unavailable. Put differently, there was no reasonable way for Plaintiff to comply with the requirements imposed by Benton. Thus, as the appeal to the ARB was effectively unavailable, Plaintiff cannot be faulted for failing to exhaust his administrative remedies. *Dole*, 438 F.3d at 809 (grievance process is effectively unavailable excusing prisoner's requirement to exhaust his claims when the correctional official fails to properly respond to grievance in accordance with the established procedure). The Medical Defendants' summary judgment motion is denied.

## IV. Conclusion

For the reasons set forth above, the State Defendants' motion to dismiss [146] is denied, and the Medical Defendants' motion for summary judgment [142] also is denied. Defendants Iyola, Lawler, Nurse, Stahr, and Williams shall answer the complaint within twenty-one days of the entry of this Order. On the Court's own motion, Steven Ekker, White & Ekker, P.C., 160 S. Municipal Drive, Suite 100, Sugar Grove, Illinois 60554 is recruited to represent Plaintiff in accordance with counsel's trial bar obligation under Local Rule 83.11(g). In light of recruitment of counsel, Plaintiff's *pro se* motions, [155], [156], [159], and Defendants' motion to strike these *pro se* motions [157], are stricken without prejudice.

**SO ORDERED**   **ENTER: 3/11/15**

**JOHN Z. LEE**
**United States District Court Judge**