# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MELVIN JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 2362 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| BRYAN R. STAHR, KERRY WILLIAMS, | ) | |
| AKINOLA IYIOLA, REBECCA LAWLER, | ) | |
| and JEFFREY NURSE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melvin Jordan has filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Kerry Williams ("Williams"), Akinola Iyiola ("Iyiola"), Rebecca Buczkowski, f/k/a Rebecca Lawler ("Lawler"), Bryan Stahr ("Stahr"), and Jeffery Nurse ("Nurse"). Plaintiff brings claims under the Eighth Amendment for deliberate indifference to medical needs (Count I) and excessive force (Count II). Defendants have filed a motion for summary judgment [206]. For the reasons provided herein, Defendants' motion is granted in part and denied in part.

## Factual Background

Plaintiff is an inmate in the custody of the Illinois Department of Corrections. Defs.' LR 56.1(a) Stmt. ¶ 1, ECF No. 208. At all times relevant to this case, he resided at Stateville Correctional Center ("Stateville"), where Defendants Williams, Iyiola, Stahr, and Nurse were employed as correctional officers. *Id.* ¶¶ 1–2. Defendant Lawler was employed at Stateville as a healthcare practitioner. *Id.*

At the outset, the Court notes that there are several Stateville policies central to this case that the parties do not dispute. First, when an inmate at Stateville claims to be injured, correctional officers are responsible for informing Stateville's medical technicians about the injury so that a medical technician "can go in and assess [the] inmate right away." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 68, 75, ECF No. 225. Under Stateville policy, a medical technician is always dispatched to evaluate an inmate upon notification of a claimed injury. *Id.* ¶ 71. After evaluating the inmate, medical technicians decide whether the inmate needs to be taken to Stateville's healthcare unit immediately, or whether the inmate can instead be scheduled for treatment the next day. *Id.* ¶ 68.

On August 11, 2008, sometime between 4:30 and 7:00 p.m., Plaintiff injured his left foot while playing basketball during a recreational session in a yard next to his confinement unit. Defs.' LR 56.1(a) Stmt. ¶ 8; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 1–2. According to Plaintiff, Defendant Williams arrived at the yard at the end of the recreational session to escort the inmates inside. *Id.* ¶ 4. When Williams arrived, Plaintiff was sitting on the ground with his left shoe off. *Id.* ¶ 5. He showed Williams his foot, which was visibly swollen, and he told Williams he was unable to walk and was suffering from excruciating pain. *Id.* ¶¶ 5, 7. He also asked Williams to call a healthcare provider to bring a wheelchair to the yard. *Id.* ¶ 7. In response, Williams told Plaintiff he "didn't give a fuck what happened" and refused to call a healthcare provider. *Id.* With no medical care forthcoming, Plaintiff made his way inside by hopping on one foot with the assistance of two other inmates. *Id.* ¶ 8.

2

Williams denies that he ever had this interaction with Plaintiff. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 4–8, ECF No. 227.

Upon entering his confinement unit, Plaintiff told Defendant Iyiola about his injury. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 9. Iyiola advised Plaintiff that a healthcare provider would be notified of the injury. *Id.* ¶ 10. In the meantime, however, Iyiola ordered Plaintiff to return to his cell on the fourth tier of the unit. *Id.* ¶¶ 10–11. Plaintiff did not want to climb the several flights of stairs leading to his cell, given the severity of his pain. *Id.* ¶ 11. He explained to Iyiola that he was in extreme pain and requested permission to wait in a ground floor holding cell until a healthcare provider arrived. *Id.* Iyiola denied this request. *Id.* Although Iyiola has no recollection of this conversation with Plaintiff, he does not dispute that it occurred. Defs.' LR 56.1(a)(3) Stmt. ¶ 22; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 9–11.

After speaking with Iyiola, Plaintiff returned to his cell. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12. Once there, he submerged his foot in the toilet bowl, hoping the water would alleviate his pain. *Id.* Even though Iyiola had told Plaintiff a healthcare provider would be notified of his injury, no healthcare provider arrived that night. *Id.* Plaintiff's pain prevented him from climbing to the top of his cell's bunk bed, where Plaintiff normally slept, and so he spent the night on the floor. *Id.* ¶ 13. When Plaintiff awoke on the morning of August 12, 2008, his foot was discolored and still swollen. *Id.* He returned to the toilet bowl, again soaking his foot in the water in an effort to dull the pain. *Id.*

Later that morning, at 11:00 a.m., Stateville went on lockdown. Defs.' LR 56.1(a)(3) Stmt. ¶ 9. The lockdown required inmates to be confined to their cells absent a medical emergency. *Id.* ¶ 10. According to Plaintiff, Defendant Lawler came to distribute medicine to inmates in Plaintiff's unit sometime that afternoon or evening, while the lockdown remained ongoing. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 14. Plaintiff showed Lawler his swollen, discolored ankle, told her he was in pain, and requested medical care. *Id.* ¶ 15. Lawler acknowledged Plaintiff's injury and told him she would send someone to escort him to the healthcare unit as soon as she finished distributing medications. *Id.* As with the previous evening, however, no healthcare provider or escort ever arrived, and Plaintiff spent another night sleeping on the floor of his cell. *Id.* Lawler denies that she ever had this interaction with Plaintiff. Defs.' Resp. LR 56.1(b)(3)(C) Stmt. ¶¶ 14–15.

Around 3:00 a.m. on August 13, 2008, an officer named Lieutenant Young was walking through the gallery in Plaintiff's unit. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 16. Plaintiff showed his injured foot to Young and asked him to notify the healthcare unit of his injury. *Id.* Later that morning, Defendant Stahr arrived at Plaintiff's cell to finally escort him to the healthcare unit. Defs.' LR 56.1(a)(3) Stmt., Ex. B ("Pl.'s Dep."), at 48. Before descending the stairway to the ground floor, Plaintiff told Stahr about his injury and pain, and he asked Stahr to request that a healthcare provider bring a wheelchair to transport him. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 19–20. Stahr refused to do so. *Id.* ¶ 19. Plaintiff then asked Stahr to temporarily handcuff Plaintiff's arms in front of his body rather than

4

behind his back, so he could use the stairway railings for balance and support. *Id.* ¶ 20. Stahr refused to accommodate this request as well. *Id.* Accordingly, Stahr handcuffed Plaintiff behind his back, and Plaintiff proceeded to "walk and hop" down three flights of stairs to the ground level. *Id.* ¶ 21. Plaintiff believes that proceeding down the stairs in this manner exacerbated his foot injury, *id.*, though he admitted at his deposition that he does not know whether this belief is accurate, Pl.'s Dep. at 53.

Next, Plaintiff attests that, when he reached the bottom of the stairs, he saw Defendant Nurse. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 22. He informed Nurse of his pain and inability to walk. *Id.* He also asked Nurse to call for a wheelchair, but Nurse refused this request. *Id.* Nurse denies that this interaction took place. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 22.

At 11:00 a.m. that morning, Plaintiff was finally seen by a medical practitioner in the healthcare unit. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 25. By this time, the lockdown had ended. Defs.' LR 56.1(a)(3) Stmt. ¶ 9. The doctor who examined Plaintiff's foot, Dr. Liping Zhang, found that the foot showed no swelling, bruising, or marked deformity. *Id.* ¶ 12. Dr. Zhang diagnosed Plaintiff with a left foot strain, a type of soft tissue injury caused by overuse. *Id.* ¶ 13. At her deposition, Dr. Zhang testified that, if a patient is not seen by a doctor for two days following a foot strain, it is possible that any swelling caused by the strain will decrease by the time the doctor examines the foot. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 53.

5

In addition to diagnosing a foot strain, Dr. Zhang told Plaintiff that his foot could possibly be fractured. *Id.* ¶ 26. She accordingly ordered an x-ray for Plaintiff's left foot. *Id.* ¶ 27. She also provided Plaintiff with an ankle brace, one crutch to be used for two weeks (a second crutch was not available), analgesic balm to apply to his foot, and a package of 400 mg Ibuprofen. *Id.* ¶ 29.

For reasons not apparent from the record, the x-ray of Plaintiff's left foot was not taken until October 2012, four years after Dr. Zhang ordered it. *Id.* ¶ 47. The x-ray results were negative for a fracture. *Id.* Defendants admit, however, that a fracture will not necessarily be detected by an x-ray that is taken four years after the fracture is formed. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 47. As of the time of his deposition in April 2013, Plaintiff claimed to still experience pain in his left foot. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 63.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court

gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

### I. Deliberate Indifference to Medical Needs

In Count I of his Third Amended Complaint, Plaintiff alleges an Eighth Amendment claim for deliberate indifference to medical needs against Defendants Williams, Iyiola, Lawler, Stahr, and Nurse. A correctional officer's or health care provider's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prevail on a claim for deliberate indifference, an inmate must show that (1) he had an objectively serious medical need and (2) the defendant was subjectively aware of the inmate's medical need but consciously disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). In addition, an inmate bringing a claim based upon delay of medical treatment must offer "verifying medical evidence" that the delay caused harm. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

7

### A. Objectively Serious Medical Need

Defendants first argue that Plaintiff has failed to offer evidence of an objectively serious medical need. "An objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 810 (7th Cir. 2000)). A medical need can also be objectively serious if a "'failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

"[M]inor aches and pains" do not rise to the level of a serious medical condition. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Thus, a foot or ankle injury that is relatively minor may not be the basis of a deliberate indifference claim. *See Bacon v. Harder*, 248 F. App'x 759, 761 (7th Cir. 2007). But where an inmate's foot or ankle injury causes significant or prolonged pain, a reasonable jury can find that the injury constitutes a serious medical condition. *See Alvarez v. Wexford Health Sources, Inc.*, No. 13 C 703, 2016 WL 7046617, at *4 (N.D. Ill. Dec. 5, 2016) (ankle sprain causing chronic pain may be considered a serious medical condition); *Smith v. Perez*, No. 13 C 3490, 2015 WL 5821442, at *2 (N.D. Ill. Oct. 2, 2015) (reasonable jury could find a serious medical condition where plaintiff claimed he had "excruciating pain in his feet").

In his deposition testimony, Plaintiff characterized the pain he felt in his foot from August 11 to 13, 2008, as "excruciating." Pl.'s Dep. at 31, 50. The pain was so

8

severe that he resorted to attempting to relieve it by soaking his foot in toilet water. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 12–13. The injury also caused discoloration and visible swelling both on the evening of the injury and throughout the following day. *Id.* ¶¶ 6, 13, 15. In addition to diagnosing a foot strain, Dr. Zhang concluded that Plaintiff's claimed inability to bear weight on his foot might be the result of a fracture, and she therefore ordered an x-ray. *Id.* ¶¶ 26, 38. Finally, Plaintiff has testified that he continued to experience pain in his left foot more than four years after the injury happened. *Id.* ¶ 63. Based on this evidence, a reasonable jury could find that Plaintiff's foot injury was sufficiently painful and prolonged to constitute an objectively serious medical condition.

Defendants contend that *Bacon v. Harder*, 248 F. App'x 759 (7th Cir. 2007), establishes that Plaintiff's foot injury was not an objectively serious medical condition. Defs.' Mot. Summ. J. at 6, ECF No. 207. But this argument is unpersuasive. In *Bacon*, the Seventh Circuit affirmed summary judgment on an inmate's deliberate indifference claim because the inmate "ha[d] presented no evidence that defendants acted with deliberate indifference." *Bacon*, 248 F. App'x at 761. The court noted in dicta that "[a]mple evidence in the record support[ed] the district court's conclusion that Bacon's ankle sprain did not constitute a serious medical need." *Id.* But it did not hold as an independent basis for its decision that no reasonable jury could have found that the inmate's ankle sprain constituted a objectively serious medical need. *See id.* As such, *Bacon* is not dispositive of this case.

9

Moreover, the underlying facts of *Bacon* are distinguishable from the facts at hand. The district court in *Bacon* concluded that the plaintiff's sprained ankle was not a serious medical condition where several rounds of x-rays taken within weeks after the injury confirmed that the plaintiff's foot had not been fractured. *Bacon v. Harder*, No. 06-C-455-S, 2006 WL 3842157, at *4 (W.D. Wis. Dec. 28, 2006). Here, by contrast, Dr. Zhang diagnosed Plaintiff with a possible foot fracture, and no x-rays were taken within a time period sufficient to eliminate this possibility. Thus, drawing reasonable inferences in Plaintiff's favor, the trier of fact could conclude that Plaintiff suffered from a fracture, rather than from a more minor, run-of-the-mill injury of the type that Bacon experienced. For these reasons, *Bacon* does not preclude a reasonable jury from finding that Plaintiff's foot injury constituted an objectively serious medical condition.

### B. Deliberate Indifference

Next, Defendants argue that Plaintiff cannot prove the second, subjective element of his deliberate indifference claim. To satisfy this element, an inmate must show that the defendants were aware of his serious medical needs and consciously disregarded a significant risk to his health or safety. *Grieveson*, 538 F.3d at 775 (citing *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)). A showing of a defendant's mere negligence or inadvertence is insufficient. *Roe*, 631 F.3d at 857.

Plaintiff has created a triable issue of fact as to the subjective element of his deliberate indifference claim. First, Plaintiff has offered evidence that all five Defendants were aware of the injury. According to Plaintiff, he showed Williams

his swollen foot, told him he was in excruciating pain, and explained that he was unable to walk. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 5, 7. Plaintiff also told Iyiola, Lawler, Stahr, and Nurse about his injury, his severe pain, and his need for medical care, and, in addition, he showed Lawler his swollen, discolored ankle. *Id.* ¶¶ 9, 11, 15, 20, 22.

Second, Plaintiff has offered evidence from which a reasonable jury could find that Defendants consciously disregarded significant risks to Plaintiff's health and safety. In particular, a reasonable jury could find that Williams, Iyiola, and Lawler disregarded such risks by failing to notify the healthcare unit of Plaintiff's medical needs. Plaintiff testified during his deposition that Williams brushed off his request for medical care by telling Plaintiff he "didn't give a fuck what happened" and refusing to call a medical technician. *Id.* ¶ 7. In addition, although Iyiola and Lawler told Plaintiff on August 11 and 12, respectively, that they would notify members of the healthcare unit of his injury, *id.* ¶¶ 10, 15, none came. A reasonable jury could conclude from this that neither had actually notified the healthcare unit as promised. Had Iyiola and Lawler done so, per Stateville policy, medical technicians would have been required to evaluate Plaintiff "right away," yet he was not evaluated until August 13. *Id.* ¶¶ 12, 15, 75. Plaintiff also points to the lack of any indication in Stateville's medical records as to when a medical technician was notified of his injury. *Id.* ¶ 76. Taken alongside Defendants' knowledge of Plaintiff's injury, this evidence creates a triable issue of fact as to Williams's, Iyiola's, and Lawler's states of mind. *See Grieveson*, 538 F.3d at 779–80

11

(correctional officers' knowledge of plaintiff's injury and one-and-a-half-day delay in securing medical treatment for him created a genuine dispute of fact as to whether the officers were deliberately indifferent to plaintiff's medical needs).

As for Stahr and Nurse, Plaintiff asserts that, despite their knowledge of Plaintiff's injury, pain, and inability to walk, they consciously disregarded his medical needs by refusing to act on Plaintiff's request for a wheelchair. *Id.* ¶¶ 20, 22. Plaintiff acknowledges that the members of the healthcare unit, not correctional officers, were responsible for determining whether wheelchairs should be provided for inmates. *Id.* ¶ 74. But before such determinations can be made, correctional officers are responsible for first notifying the healthcare unit about injuries potentially requiring a wheelchair. *Id.* ¶¶ 68, 75. In addition, even if the healthcare unit had already determined that Plaintiff did not need to be transported to the healthcare unit in a wheelchair, a jury could still conclude that Stahr and Nurse were deliberately indifferent to Plaintiff's needs on the ground that, upon seeing Plaintiff struggle to walk, Stahr and Nurse had reason to question the propriety of the healthcare unit's decision. *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (citing *King*, 680 F.3d at 1018). In sum, considering this evidence and drawing inferences in Plaintiff's favor, a rational jury could conclude that Stahr and Nurse consciously disregarded risks to Plaintiff's health and safety by refusing to inform the healthcare unit of his request for a wheelchair and making him descend three flights of stairs to the healthcare unit with his hands shackled behind his back.

Defendants nevertheless argue that they should be shielded from liability as a matter of law on the ground that Plaintiff has not offered verifying medical evidence that he was harmed by any delay in treatment. But this argument ignores medical evidence in the record that Plaintiff was diagnosed with a foot strain, slated for an x-ray to determine whether his foot had been fractured, and treated with pain medication, a brace, a crutch, and analgesic balm. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 26, 27, 29; Defs.' LR 56.1(a)(3) Stmt. ¶ 13. Plaintiff has offered sufficient verifying medical evidence from which a jury could determine that a delay in treatment at least "unnecessarily prolonged and exacerbated [Plaintiff's] pain." *Grieveson*, 538 F.3d at 779–80 (internal quotation marks omitted).

Defendants also raise several factual issues in an attempt to rebut Plaintiff's evidence. For example, they deny that the evidence demonstrates Iyiola's or Lawler's failure to timely contact the healthcare unit, contending that any delay in treatment was merely the result of the lockdown on August 12. *See* Defs.' Mot. Summ. J. at 7. But a jury could reasonably reject this argument. First, the lockdown did not begin until 11:00 a.m. on August 12. Defs.' LR 56.1(a)(3) Stmt. ¶ 9. Plaintiff asserts, however, that Iyiola told him he would contact the healthcare unit on August 11. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10. In light of Stateville's policy of promptly sending a medical technician to evaluate an inmate upon notification of a claimed injury, *id.* ¶¶ 68, 75, a jury could find that a medical technician would have had time to evaluate Plaintiff on August 11 or during the morning of August 12— before the lockdown began—if Iyiola had, in fact, followed up with the healthcare

13

unit. Moreover, it is unclear from the parties' submissions whether the lockdown was still ongoing when Plaintiff was finally escorted to the healthcare unit. The parties agree that the lockdown ended at 8:35 a.m. on August 13 and that Plaintiff was seen by Dr. Zhang around 11:00 a.m. that same day. Defs.' LR 56.1(a)(3) Stmt. ¶ 9; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 25. But neither party states when, exactly, Stahr came to meet Plaintiff at his cell. If Stahr escorted Plaintiff before the lockdown was lifted, a jury could discredit Defendant's argument that the lockdown played a decisive role in delaying Plaintiff's access to medical treatment. At the summary judgment stage, Plaintiff is entitled to this inference.

Defendants also maintain that Lawler's and Nurse's timesheets indicate they were not even working at Stateville on the days when Plaintiff claims to have interacted with them. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 30, 35; *id.*, Exs. K, L. In response, Plaintiff suggests that the timesheets may have contained inaccuracies, given that they were filled out manually by Stateville's Timekeeping Office based upon daily sign-in sheets. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 87–90. Indeed, Lawler stated during her deposition that she and other employees sometimes forgot to sign in upon reporting for work, in which case the Timekeeping Office would mark absences on the employees' timesheets unless the employees later followed up with the Timekeeping Office to correct the inaccuracy. *Id.* ¶¶ 89–90; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) ¶¶ 89–90. A jury weighing this conflicting evidence and making credibility determinations could find that Lawler's and Nurse's timesheets were

inaccurate and that Lawler and Nurse were likely working at Stateville on the days when Plaintiff claims he spoke with them.

In sum, none of the factual issues Defendants have raised warrants summary judgment in their favor. Plaintiff has raised genuine disputes of material fact as to whether Defendants were deliberately indifferent to his foot injury. He is thus entitled to present his deliberate indifference claim to a jury.

## II. Qualified Immunity

In addition to his deliberate indifference claim in Count I, Plaintiff has brought an Eighth Amendment excessive force claim in Count II against Defendants Williams, Iyiola, Stahr, and Nurse. In moving for summary judgment, Defendants contend that qualified immunity shields them from liability as to the claims in both counts. For the reasons explained below, the Court finds that Defendants are entitled to qualified immunity with respect to Count II, but not with respect to Count I.

"[Q]ualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe*, 631 F.3d at 858; *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a right was "clearly established" at the time of Defendants' conduct, the Court must look at the right in a particularized sense, rather than at a high level of generality. *Roe,* 631 F.3d at 858. "As the Supreme Court recently has emphasized, however, there is no need that the very action in question have previously been held unlawful." *Id.* (quoting *Safford Unified Sch.*

*Dist. v. Redding*, 557 U.S. 364, 377 (2009)) (internal quotation marks and brackets omitted).

At the time of the events in question, Plaintiff had a clearly established constitutional right to be timely treated for his objectively serious medical condition. *See Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997) ("This Court's post-*Estelle* decisions, as well as those of the other circuit courts, have repeatedly recognized that delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims."); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("As *Estelle* recognized, a prison official may evidence deliberate indifference by failing to treat or delaying the treatment of a serious medical need.").

Defendants nevertheless contend that Plaintiff did not have a clearly established constitutional right to be timely treated for his particular type of foot injury. In support, they rely again upon *Bacon v. Harder*, in which the Seventh Circuit, as discussed above, noted in dicta that "[a]mple evidence in the record support[ed] the district court's conclusion that [the plaintiff's] ankle sprain did not constitute a serious medical need." 248 F. App'x at 761. But the fact that the *Bacon* plaintiff's foot injury may not have been severe enough to constitute a serious medical need does not mean that, in this case, Plaintiff did not have a clearly established right to timely treatment for his injury. Rather, it is clearly established that an inmate's right to medical care extends to injuries that are "diagnosed by a physician as mandating treatment" or "so obvious that even a lay person would

16

easily recognize the necessity for a doctor's attention." *Zentmyer*, 220 F.3d at 810. For the reasons explained *supra*, at a minimum, Plaintiff has adduced sufficient evidence from which a trier of fact could find that his foot injury falls into these categories. Defendants therefore are not entitled to summary judgment on qualified immunity grounds with respect to Plaintiff's deliberate indifference claim. *See Roe*, 631 F.3d at 858–61 (rejecting argument that defendant was entitled to qualified immunity in deliberate indifference case where it was not clearly established that defendant had violated plaintiffs' constitutional rights "with respect to the *particular* condition and *particular* treatment at issue") (emphasis in original).

Plaintiff's excessive force claim, however, is another matter. An inmate seeking to prevail on an Eighth Amendment excessive force claim must show that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in good faith effort to maintain or restore discipline." *Filmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)) (internal quotation marks omitted). In determining whether an inmate has established an excessive force claim, "several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Id.* at 504. Thus, inherent in the analytical framework governing excessive force claims is a threshold requirement that an officer apply some degree of force to the inmate, or at least that

17

he stand idly by while another officer applies force. *See id.* at 503–04; *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

Nowhere in his filings does Plaintiff maintain that Defendants directly applied excessive force to him.[1] Rather, the theory underlying his excessive force claim is that, by failing to call a healthcare provider or provide a wheelchair for his transport to the healthcare unit, Defendants effectively left Plaintiff with no choice but to apply harmful force to himself by either walking on his injured left foot or hopping on his right foot. *See* 3d Am. Compl. ¶¶ 106–16. But Plaintiff has not cited—and the Court has not found—any Supreme Court or Seventh Circuit precedent in which an inmate was permitted to proceed with an excessive force claim based upon such a theory. As such, the Court concludes that there is no clearly established right for an inmate, even if injured, to be free from force that he applies to himself in the course of traveling to and from various areas within a correctional facility. Defendants are therefore entitled to qualified immunity with respect to Count II.

---

[1] Plaintiff has offered evidence that Defendant Stahr applied some direct physical force to him in cuffing his hands behind his back upon escorting him to the healthcare unit. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 21. But if Plaintiff intends to argue that the act of handcuffing Plaintiff behind his back amounted to excessive force, he has not articulated that argument clearly in his filings. In any event, such an argument would do nothing to save Plaintiff from summary judgment as to Count II, because nothing in the evidence suggests that Stahr used more than a *de minimis* application of physical force in handcuffing Plaintiff. *See Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001) (internal quotation marks omitted) (noting that an Eighth Amendment excessive force claim "ordinarily cannot be predicated on a *de minimis* use of force"); *Verser v. Smith*, No. 14 C 1187, 2017 WL 528381, at *4–7 (N.D. Ill. Feb. 9, 2017) (granting summary judgment in defendants' favor on excessive force claim based upon allegedly malicious tightening of handcuffs).

## Conclusion

For the reasons stated herein, Defendants' motion for summary judgment [206] is denied with respect to Plaintiff's deliberate indifference claim (Count I) and granted with respected to Plaintiff's excessive force claim (Count II). A status hearing will be held at 9:00 a.m. on April 5, 2017, at which point the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**  ENTERED    3/13/17

_____
**John Z. Lee
United States District Judge**